## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

LANTECH.COM, LLC.                                              PLAINTIFF

v.                                                    NO.  3:06-CV-334-JDM

CURT YARBROUGH, et al.                                        DEFENDANTS

### MEMORANDUM OPINION

At issue in this matter is a covenant not to compete in employment, and a confidentiality agreement.  The plaintiff, Lantech.com, LLC, moves for a preliminary injunction against the defendants, who are a Lantech former employee, Curt Yarbrough, and Mr. Yarbrough's current employer, Wexxar Packaging, Inc., and affiliate, Pro Mach, Inc.  After thorough consideration of the parties' memoranda and a review of the excellent presentation of both counsel at a two-day hearing, the court concludes Mr. Yarbrough should not be enjoined from his current employment through enforcement of the no-compete agreement but that Mr. Yarbrough, notwithstanding, should abide by the terms of the confidentiality agreement.  The court will therefore deny in part and grant in part the motion for preliminary injunction.[1]

### I.

Mr. Yarbrough began employment with Lantech on November 1, 2002.  As a condition of employment, Lantech required Mr. Yarbrough to sign an agreement not to compete for two years after separation from employment in any area where Lantech does business, which is nationally and in some foreign countries.  The non-competition clause specifically restricts Mr.

---

[1]The parties, who are of diverse citizenship, agree that venue is proper and that the law of the forum state applies to the controversy at hand.  They further consent to the jurisdiction of the undersigned magistrate judge. Although the factual and legal issues present fertile ground for a more detailed and lengthy discussion, the undersigned will begin an extended medical leave tomorrow and issues this opinion in its brevity with the aim of avoiding delay and any unfairness to the parties.

Yarbrough from "entering into the employ of ... any [corporation] engaged in the business of designing, manufacturing, selling, or distributing stretch wrapping ... equipment or any other product manufactured or under research and development by Lantech." (Docket no. 26, Plaintiff's Closing Brief at p. 4.) Mr. Yarbrough held a position as a regional sales manager for Tennessee and states to the south. He was a top performer for all but the last one or two quarters of his employment. He was terminated on April 3, 2006.

Mr. Yarbrough thereafter contacted a Wexxar-affiliated company to apply for any position available. Both Lantech and Wexxar manufacture and sell fully automatic case sealers and case erectors, although the majority of Lantech's business is represented in other product lines, e.g., shrink wrappers, stretch wrappers, palletizers, and other secondary packaging equipment solutions. Despite its substantial investment toward, and relatively recent entry in, the case equipment market, Lantech anticipates and plans significant expansion in the North American case equipment market.

On the other hand, Wexxar is a dominant force in the case equipment market. In his sales position at Wexxar, Mr. Yarbrough enjoys an established Wexxar client base in a territory that includes Kentucky and states to the north. Although Wexxar and Mr. Yarbrough appear to have taken many precautions to militate against unfair competition, Lantech complains Mr. Yarbrough's employment with Wexxar directly competes and impairs Lantech's ability to make inroads with Wexxar's established customers in violation of the restrictive covenant.

## II.

Although courts have historically disfavored restraints of trade, covenants not to compete in employment have been enforced in Kentucky in limited circumstances, so long as the

covenants are reasonable.  Unreasonable covenants are overbroad in geographic scope or duration or do not protect any legitimate interest of the covenantee.  "[T]he test for reasonableness is whether the restraint, considering the particular situation and circumstances, is such only as to afford fair protection to the legitimate interests of the [employer] and not so extensive as to interfere with the interests of the public."  *Stiles v. Reda*, 228 S.W.2d 455, 456 (Ky. 1950) (internal quotation and citation omitted.)

"The policy behind enforcing noncompetition clauses is to protect businesses against employees resigning and taking valued clients with them."  *Managed Health Care Assoc., v. Kethan*, 209 F.3d 923, 929 (6th Cir. 2000), citing *Central Adjustment Bureau, Inc., v. Ingram Assoc.*, 622 S.W.2d 681, 685-86 (Ky.Ct.App. 1981).  A sufficient counterveiling justification must exist to support the restraint of a person's means of livelihood and post-employment freedom.  *See Orion Broadcasting, Inc. v. Forsythe*, 477 F.Supp. 198 (W.D.Ky. 1979) (applying Kentucky law).  "The modern philosophy of the law is that a man may sell his services but not himself ... ."  *Id.*, citing *Calhoun v. Everman*, 242 S.W.2d 100 (Ky. 1951).

In the *Forsythe* case, the Honorable District Judge Thomas A. Ballantine offered that, had the defendant voluntarily severed her employment with the plaintiff, the court would not have hesitated to enforce the non-competition agreement, but to "hold that Ms. Forsythe, at the whim of plaintiff, could be deprived of her livelihood in a highly competition market, seems ... to be an example of industrial peonage which has no place in today's society."  *Id.* at 201.  If an employer places little value in an employee's services and determines to sever the relationship, actually or constructively, the employer stands in a weaker position to complain that another employer is receiving the benefit of those services.

As in any case for specific enforcement or equitable relief, the court sitting in equity recognizes the overarching concern whether enforcement would serve substantial justice.  "The fairness of the transaction and its freedom from any taint of oppression is always a matter of consideration in weighing the right of a party to the [equitable] aid of the court."  *Crowell v. Woodruff*, 245 S.W.2d 447, 450 (Ky. 1952) (expounding on the "cardinal maxim of Clean Hands," which holds, "He that hath committed inequity shall not have equity.").

### III.

Lantech now seeks specific performance of Mr. Yarbrough's covenant not to compete and duty of confidentiality.  In its motion for a preliminary injunction, Lantech seeks to enjoin Mr. Yarbrough from continued employment with Wexxar for approximately two years, an injunction essentially requiring Mr. Yarbrough to find other employment outside the case equipment market.  Lantech concedes Mr. Yarbrough may find employment consistent with his prior experience with distributors.   The court concludes, however, that in light of the circumstances of this case, the equities disfavor Lantech's attempt to enforce the non-competition agreement against Mr. Yarbrough in his current position.

Lantech terminated Mr. Yarbrough in a manner which was abrupt, peremptory, and without explanation.  Its harsh actions were in contravention of its own employment policies as explained by its vice president for human resources, and in violation of the terms of its ninety day improvement plan for Mr. Yarbrough.  It acted in a sudden reversal of position, after it had told Mr. Yarbrough in a thirty day review meeting that things were going well and that he was demonstrating "motivation" and "passion."  Management denied him even minimal severance, immediately cut off his health insurance for himself, his wife, and his three adopted children, and

declined to provide any outplacement assistance, in contravention of its normal practice of providing a "soft landing" for terminated sales representatives.  In short, rather than a soft or medium landing, it gave him the quick rush out the door.

This it may do under applicable state law – Kentucky is an at-will employment state and Lantech could terminate Yarbrough for any reason or no reason, provided it was not an illegal discriminatory one, involving, for example, age or race or gender.  There is no such allegation here.

However, having acted in a minimally lawful but decidedly peremptory way, Lantech now appears in court, invoking the powers of equity of the judiciary.  Having materially violated its own internal policies and its representations to Mr. Yarbrough about how it would conduct a review of his performance, it now seeks the aid of the court in providing strict and full enforcement of a broad and anticompetitive covenant.  Having denied minimal protections to Mr. Yarbrough, it now seeks to enlist the aid of the court in providing maximal protection for its competitive interests.

Mr. Yarbrough was not terminated for misconduct, nor did he leave on his own initiative to compete with Lantech.  His record had been generally a good one, although he had a brief decrease in sales in the third quarter of 2005.  His apparent sin was to fail to schedule a full day of "impactful" meetings with customers in Jacksonville, Florida on a day when his boss, Kevin Lyden, and the new president of Lantech were in town.  This embarrassed Mr. Yarbrough's boss, and caused the president to fly home early, no small misstep in the corporate world.  He then made another misjudgment, asking Lyden if he (Yarbrough) could report to someone else – a request which he quickly took back.

For these corporate missteps, Lantech certainly could terminate Mr. Yarbrough.  That is not in issue here.  However, Lantech cannot act toward Mr. Yarbrough in a way which violates its significant representations to him and its own corporate human resources policy and simultaneously obtain enforcement through equity of its anticompetitive clause.

The court therefore finds Lantech is not likely to succeed on the merits because the requested injunction is overbroad.  As additional, independent grounds, the court further finds that the equities disfavor enjoining Mr. Yarbrough from his current position.  The court will enter a separate order.

DATE:

cc:  Counsel of Record